USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/10/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LARYSA V. GOLUBOVYCH,

                Plaintiff,

-against-

SAKS 5TH AVENUE, INC.,

                Defendant.

1:22-cv-9923-MKV

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

---

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff, who is proceeding *pro se*, brings this action against Saks Fifth Avenue Inc.[1] ("Saks"), alleging discrimination, retaliation, and hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII") and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634 ("ADEA"). Defendant now moves to dismiss Plaintiff's Amended Complaint. For the reasons below, the motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND[2]

*Plaintiff is Subjected to Alleged Discriminatory Acts by Saks*

Plaintiff was born in 1956 and has worked as a Sales Associate at Saks since 2004. *See* Compl. at 21, 27. From 2004 until approximately 2018, Plaintiff worked as a "top" Associate, earning upwards of $70,000 per year. *See* Compl. at 27. Plaintiff alleges that beginning in or

---

[1] Defendant asserts that Plaintiff incorrectly names Saks Fifth Avenue, Inc. as Defendant in this case, instead of properly naming Saks & Company LLC.

[2] The facts are taken from the Amended Complaint [ECF No. 35] ("Compl." or "the Complaint"), and for purposes of this motion, are accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, Plaintiff's Amended Complaint consists of multiple documents, each with their own internal page numbers, but filed as one single document. Accordingly, for purposes of this motion, the Court cites to the page numbers as though the Complaint is one document, consisting of twenty-seven pages.

around May 2018 and until her ultimate termination on August 5, 2020, Saks subjected her to a "succession of discriminatory" acts and retaliation based on her age. Compl. at 2, 9.

Specifically, Plaintiff alleges that in May 2018, January 2019, and August 2019, she and several other associates between the ages of 50 and 70 years old were relocated to work in the back of Saks's store, which was surrounded by construction, noise, and dust and contained no entrances or exits. Compl. at 8. Plaintiff alleges that the environment deterred customers from visiting her assigned work zone, and such isolated placement had the effect of reducing her income from approximately $70,000 to approximately $25,000 per year. Compl. at 27. According to Plaintiff, newer and younger sales associates were not placed in the isolated zones but were instead assigned central locations which attracted more customers and, therefore, potential commission. Compl. at 27. In addition, newer and younger associates were allegedly allowed to move freely throughout the store. Compl. at 27.

On June 28, 2018, Plaintiff received a written warning for purportedly being "unable to communicate thoroughly with [her] director and . . . regarding personal concerns." Compl. at 8. On October 4, 2018, Saks required Plaintiff to "attend [a] 30, 60 90 Day PIP Follow-Ups Process" meeting "for all reviews in which an associate has shown an improvement in behavior/productivity." Compl. at 8. Plaintiff further generally alleges she was "turned down" "a few times" for promotions and transfers that were given to younger works with less experience and fewer qualifications. Compl. at 23.

*Plaintiff Files a Charge with the New York State Division*
*of Human Rights and Files an Article 78 Proceeding*

On November 30, 2018, Plaintiff—represented by counsel at the time—filed a verified complaint with the New York State Division of Human Rights ("SDHR"), alleging discrimination based on race and age, in violation of Title VII and the ADEA. *See* Declaration of Justin Reiter

2

[ECF No. 48] ("Reiter Decl."), Ex. C ("SDHR Complaint");[3] Reiter Decl., Ex. D ("SDHR Pl. Rebuttal"). Among other allegations, Plaintiff alleged that Saks discriminated against her by (1) "giving her a warning on June 28, 2018," along with other "frivolous warnings under false accusations" during the time period of 2013 through November 30, 2018, (2) calling her into a meeting on October 4, 2018 "for a '60 Day PIP Follow-Up Process' to discuss her sales," and (3) in 2018 by placing her "along with five other associates between the ages of 50 and 70 years old" in its Accessories Department, which "is in an isolated, distant area in the back of [Defendant's] store that is surrounded by construction, which in turn creates noise and dust that deters customers from visiting." See SDHR Pl. Rebuttal.

On June 3, 2019, the SDHR concluded that there was a "lack of evidence in support of [Plaintiff's] allegations of retaliation, and age and race/color discrimination," and issued a "No Probable Cause" determination, dismissing Plaintiff's SDHR Charge. See Reiter Decl., Ex. E ("SDHR Determination and Order After Investigation"). In the Determination and Order After Investigation, the SDHR stated that Plaintiff's charge was filed under Title VII and the ADEA, "[e]nforcement [of which] is the responsibility of the [Equal Employment Opportunity Commission ("the EEOC")]." Id. The Order further advised that Plaintiff had "the right to request a review by EEOC of this action," and to "secure review, [Plaintiff] must request it in writing, within 15 days of [] receipt of this letter."[4] Id.

---

[3] In the Rule 12(b)(6) context, a court may "take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." Glob. Network Commc'ns, Inc. v. City of N.Y., 458 F.3d 150, 157 (2d Cir. 2006) (internal quotation marks and citation omitted). Additionally, where a defendant moves on grounds of res judicata or similar preclusion grounds, a district court may also properly consider public records that may be judicially noticed. Williams v. New York City Hous. Auth., 816 F. App'x 532, 534 (2d Cir. 2020). As such, although Plaintiff does not attach certain documents to her Complaint, the Court takes judicial notice of and cites such documents that were attached to defense counsel's sworn declaration under penalty of perjury. See Declaration of Justin Reiter ("Reiter Decl.").

[4] As later noted, Plaintiff filed a charge with the EEOC on March 5, 2020, evidently more than 15 days after receipt of the SDHR letter and very likely untimely. Compl. at 9, 27. However, given Plaintiff's pro se status, and Defendant's failure to raise this in their motion, the Court does not address timeliness of the EEOC Charge in its opinion.

Instead, on July 15, 2019, Plaintiff commenced a special proceeding pursuant to Article 78 of the New York Civil Practice Law and Rules ("CPLR") against Saks and the SDHR in New York State Supreme Court, County of New York (the "Article 78 Action") (Index No. 101086/2019), challenging the SDHR's dismissal of Plaintiff's SDHR Charge and realleging largely the same claims and factual charges regarding incidents occurring between May 2018 and the winter of 2019 as had been set forth in the SDHR proceeding. *See* Reiter Decl., Ex. F ("Article 78 Petition"). On January 3, 2020, the State Court dismissed Plaintiff's Article 78 Petition, holding that "based on the record, it cannot be said that the SDHR's decision was arbitrary and capricious, or without a rational basis." *See* Reiter Decl., Ex. G ("State Court Opinion"). Plaintiff contends that while her Article 78 proceeding was pending, her supervisor, Briana Kottler ("Kottler") "harassed" her on August 19, 2019, August 23, 2019 and August 24, 2019 by demanding that Plaintiff stay "in [her] zone" while "young employees" were allowed to "relocate[] to every leased boutique to ring sales for customers." Compl. at 9, 13, 23.

During the timeframe underlying Plaintiff's allegations, her mother suffered from a medical condition. Compl. at 9. Sadly, in or around September and October 2019, the health of Plaintiff's mother worsened. Compl. at 9. Plaintiff asserts that around this time, she provided Kottler and Saks a doctor's note, which advised that Plaintiff's mother could not be unattended after 8:30 pm. Compl. at 9. Plaintiff alleges that notwithstanding informing Saks that she could not work after 8:30 pm in order to care for her mother, on November 29, 2019, Kottler scheduled Plaintiff as the only associate from her department to work a night shift for a special store event. Compl. at 9. When Plaintiff returned home from her work shift that night, she found her mother unresponsive, and her mother passed away that night. Compl. at 9. Plaintiff states that since 2019, she has been in active treatment for depression, panic attacks, and anxiety. Compl. at 9.

4

*Plaintiff Files a Charge with the EEOC and is Terminated from Saks*

On March 5, 2020, Plaintiff filed a charge with the EEOC (the "EEOC Charge"), alleging that Saks discriminated against her based on her age and retaliated against her because she complained of age discrimination. Compl. at 9, 27. As she had in the SDHR Charge, in the EEOC Charge, Plaintiff alleged, *inter alia*, that: (1) she and other sales associates in their "50s and 60s" were "relegated to non-visible areas in the stores," (2) she was written up for leaving her "area (a 'zone')," and (3) "newer/younger sales associates [were] not placed in isolated areas." Compl. at 27. Unlike in her SDHR claim, Plaintiff did not assert any Title VII claim in her EEOC Charge. Compl. at 27.

Exactly five months later, on August 5, 2020, Plaintiff was terminated via text message by the director of the "main floor" due to her "sales numbers for 2019." Compl. at 23. Three days after receiving the text message terminating her employment, Plaintiff alleges that Connie Brienza, Director of Human Resources, emailed Plaintiff informing her that she was "required to sign and return [a] Separation release," and that failure to sign it would "render [Plaintiff] ineligible" for benefits coverage. Compl. at 9. Plaintiff ultimately signed the "Separation release" (hereinafter the "Separation Agreement and Release"). Compl. at 9. Plaintiff alleges that, at the time she signed the Agreement, she was suffering from "severe psychological trauma," due to, among other things, the "hostile work environment [at Saks]" and the "loss of [her] mother," which should render the Agreement "illegal and invalid." Compl. at 9. Plaintiff further alleges that while Plaintiff's EEOC Charge was pending, Saks fired at least seven additional employees from Plaintiff's department, "many of [whom] were replaced by younger employees." Compl. at 23. Plaintiff provides no additional detail on these seven terminated employees or the younger employees who purportedly replaced them.

On August 23, 2022, the EEOC issued Plaintiff a Determination Letter stating that the EEOC's investigation determined "that there is reasonable cause to believe that [Saks] discriminated and retaliated against [Plaintiff] and a class of similarly situated older workers on account of age." Compl. at 9, 16. On September 23, 2022, Plaintiff was issued a right to sue letter. Compl. at 25.

## **PROCEDURAL HISTORY**

Plaintiff timely filed this action within 90 days of receiving her right to sue letter. [ECF No. 1]. She subsequently filed an Amended Complaint ("the Complaint") with leave of the Court. [ECF No. 35]. The Complaint asserts various claims, including an unspecified Title VII claim and age discrimination, retaliation, and hostile work environment claims under the ADEA. Compl. at 20, 21. Defendant Saks now moves to dismiss, arguing that the Court lacks subject matter jurisdiction and that Plaintiff has failed to state a claim under Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1) and 12(b)(6) respectively. *See* Motion to Dismiss [ECF No. 47]; Memorandum of Law [ECF No. 49] ("Def. Mem."); Declaration of Justin Reiter [ECF No. 48] ("Reiter Decl."). Plaintiff opposes the motion and filed a letter with the Court, which appears to serve as her opposition to Defendant's motion to dismiss, referring to such motion as "illegal" and "unacceptable."[5] *See* Memorandum of Law in Opposition to Motion to Dismiss [ECF No. 59] ("Pl. Opp."). Defendant replied. *See* Reply Memorandum of Law [ECF No. 62] ("Def. Reply"). Plaintiff, without leave of the Court, filed a two-page "Response" letter to Defendant's Reply Memorandum, which the Court treats as a Sur-Reply. *See* [ECF No. 65] ("Sur-Reply"). Despite Defendant's correct assertion that Plaintiff failed to request permission to file a sur-reply in

---

[5] The Court held a status conference on February 14, 2024 to explain to Plaintiff Defendant's legal right to move to dismiss the Complaint. *See* [ECF No. 72].

contravention of the Court's Individual Rules, because Plaintiff is *pro se*, the Court considers Plaintiff's Sur-Reply in ruling on the motion subject to the Federal Rules of Evidence.

## **LEGAL STANDARD**

In general, the Court is obligated to construe a *pro se* complaint liberally and interpret it to raise the "strongest arguments that it suggests." *Costabile v. New York City Health & Hosps. Corp.*, 951 F.3d 77, 80 (2d Cir. 2020).

### *Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)*

Federal courts are "courts of limited jurisdiction." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). "A case is properly dismissed for lack of subject matter jurisdiction under [Fed. R. Civ. P.] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); Fed. R. Civ. P. 12(b)(1). "When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000); *see also Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006). The Court also may resolve disputed jurisdictional fact issues, however, "by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009) (citing *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

### *Failure to State a Claim Under Rule 12(b)(6)*

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under Rule 12(b)(6), any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). While the Court is obligated to construe a *pro se* complaint

7

liberally and interpret it to raise the "strongest arguments that it suggests," *Costabile*, 951 F.3d at 80, the "special solicitude" afforded in *pro se* cases has its limits. In order to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief. *Shomo v. State of New York*, 374 F. App'x 180, 183 (2d Cir. 2010).

The Supreme Court has held that under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678. The Court must draw all reasonable inferences in favor of Plaintiff where Defendant moves to dismiss under Fed. R. Civ. P. 12(b)(6). *Id*. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id*. at 678–79. But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible—not merely possible—that the plaintiff is entitled to relief. *Id.*

In considering a motion to dismiss pursuant to Rule 12(b)(6)—unlike a motion to dismiss pursuant to Rule 12(b)(1)—the Court "must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999). However, where a defendant moves to dismiss on grounds of *res judicata* or similar preclusion grounds, a district court may also properly consider public records that may be judicially noticed. *Williams v. New York City Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020); *see also TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014) ("A court may consider a *res judicata* defense on

8

a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice.").

For example, "[i]n the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*." *Jianjun Lou v. Trutex, Inc.*, 872 F. Supp. 2d 344, 350 n.6 (S.D.N.Y. 2012); *see also Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of pleading in another lawsuit). The Court may also "take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Glob. Network Commc'ns*, 458 F.3d at 157 (internal quotation marks and citation omitted).

## DISCUSSION

Saks makes several arguments in support of its motion to dismiss. First, Saks argues that Plaintiff lacks standing to pursue her claims because she previously released them by signing the Separation Agreement. Def. Mem. at 8. Second, Saks argues that Plaintiff's Title VII Claim must be dismissed for failure to exhaust administrative remedies. Def. Mem. at 16. Third, Saks argues that the majority of Plaintiff's claims are barred by the doctrines of collateral estoppel and *res judicata*. Def. Mem. at 18. Finally, Saks argues that, even if Plaintiff's claims were to survive, they are time barred to some extent. Def. Mem. at 15. The Court addresses each argument in turn.

I.  **The Court Will Not Consider the Separation Agreement at the Motion to Dismiss Stage.**

First, Saks argues that Plaintiff lacks standing to pursue her claims because she previously released the claims by signing a Separation Agreement. Def. Mem. at 8. Because standing is a threshold issue that affects this Court's subject-matter jurisdiction, the Court addresses

9

this issue before taking up other possible grounds for dismissal. *Cantor Fitzgerald, L.P, v. Peaslee*, 88 F.3d 152, 155 (2d Cir. 1996).

While the Court may indeed consider matters outside the pleadings in a Rule 12(b)(1) analysis, Saks, in essence, asks the Court not only to take judicial notice of, but also to evaluate the merits, the validity, and the applicability of the terms of the Separation Agreement. *See e.g.*, Def. Mem. at 10 ("Here, Plaintiff's Separation Agreement meets all of the conditions for a knowing and voluntary release."); *id*. at 13 ("Because the Separation Agreement meets all of the [Older Workers Benefit Protection Act] requirements, it follows that Plaintiff's execution of the Separation Agreement was knowing and voluntary."); *id*. at 13 ("Plaintiff cannot establish that she signed the Agreement under duress.").

Though the Court recognizes that "several cases in this Circuit and others have concluded that a plaintiff lacks standing where he or she signed a similar release, most of these were decided at the summary judgment phase—not on a motion to dismiss." *Walker v. Accenture PLC*, 511 F. Supp. 3d 169, 185 (D. Conn. 2020) (collecting cases); *see also Emps. Committed for Just. v. Eastman Kodak Co.*, 407 F. Supp. 2d 423, 436 (W.D.N.Y. 2005) (citing *United States v. Twenty Miljam-350 IED Jammers*, 669 F.3d 78 (2d Cir. 2011) (affirming the district court's grant of a motion to strike or for summary judgment)); *Corines v. Charter One Bank*, 365 F. App'x 237 (2d Cir. 2010) (affirming the district court's grant of a motion for summary judgment); *Sutherland v. Touhey*, 182 F.3d 901 (2d Cir. 1999) (same); *Malaney v. Elal Israel Airlines*, 331 F. App'x 772 (2d Cir. 2009) (same)). This is because the validity of a release is a peculiarly fact-sensitive inquiry. *See Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437–38 (2d Cir. 1998).

Here, however, Saks has not asked the Court to convert its motion to dismiss into one for summary judgment such that the Court would be permitted to *substantively* evaluate the terms of the Separation Agreement. *See e.g.*, *Walker*, 511 F. Supp. 3d at 185; *Ridinger v. Dow Jones*, 717

10

F. Supp. 2d 369, 370 (S.D.N.Y. 2010), *aff'd*, 651 F.3d 309 (2d Cir. 2011) (converting a motion to dismiss to a motion for summary judgment because of the moving parties' reliance on a separation agreement, which was outside the scope of the complaint); *Williams v. Black Ent'mt Tele., Inc.*, No. 13-cv-1459 (JS), 2014 WL 585419, at *8 (E.D.N.Y. Feb. 14, 2014) ("As Defendants correctly note, the General Release is a document outside of the pleadings, and therefore would require conversion of their motions to dismiss to one for summary judgment.").

At this stage, Saks simply has not shown and cannot show that Plaintiff relied on the Separation Agreement in *framing* her discrimination and retaliation claims. Nor has Plaintiff appended a copy of the Separation Agreement to her Complaint. *Hayden*, 180 F.3d at 54 (holding that on motions to dismiss, a court may properly consider documents attached to the complaint as exhibits). While the Separation Agreement may ultimately be relevant to the issue of waiver, it simply does not relate to the *substance* of Plaintiff's discrimination claims and therefore is not integral to the Complaint. In fact, while Plaintiff acknowledges the *existence* of the Separation Agreement in her Complaint, she—in the same vein—raises issues regarding the Agreement, including its legality and validity. *See* Compl. at 9. These are fact-intensive and disputed issues not properly resolved on a motion to dismiss. And at this stage, Plaintiff is entitled to every inference in her favor. *Iqbal*, 556 U.S. at 678.

Accordingly, the Court declines to consider at the motion to dismiss stage whether the Separation Agreement precludes Plaintiff from maintaining her claims.

**II.      Plaintiff's Unspecified Title VII Claim is Dismissed
           for Failure to Exhaust Administrative Remedies.**

Saks next argues that Plaintiff's Title VII Claim must be dismissed for failure to exhaust administrative remedies. Def. Mem. at 16. As a threshold matter, the Court notes that while Plaintiff marked "Title VII" under "Federal Claims" in her Complaint, Plaintiff failed to check any

protected class under Title VII that purportedly served as the basis for her employer's discrimination. Compl. at 20. It appears quite clear to the Court that the crux of Plaintiff's claims center around *age* discrimination. However, Title VII does not encompass claims for employment discrimination on the basis of age. *See* 42 U.S.C. § 2000e–2; *see also Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 586–87 (2004) ("Congress chose not to include age within discrimination forbidden by Title VII . . . ."); *Pierre v. Napolitano*, 958 F. Supp. 2d 461 (S.D.N.Y. 2013) ("Title VII does not protect against discrimination on the basis of age[.]").

Within the twenty-seven-page Complaint, Plaintiff fleetingly alleges that in November 2018, eight male Saks employees filed a race and age discrimination lawsuit against Saks, in which a settlement was reached. Compl. at 9. Plaintiff thereafter states that "when, in one case with eight male employees, [Saks] disregards the signed Separation Agreements and reaches the settlement, and, in another identical case with two female employees, tries to dismiss it, [Saks] acts illegally and discriminatory." Compl. at 9. To the extent that, construing Plaintiff's Complaint liberally as the Court must, *Costabile*, 951 F.3d at 80, this sole sex-related allegation suffices to allege a sex discrimination claim under Title VII, the claim is barred for failure to exhaust administrative remedies.

As a precondition to filing a Title VII claim in federal court, a plaintiff must first file a timely charge of discrimination with the EEOC or equivalent state or local agency. *See Staten v. Patrolmen's Benevolent Ass'n of City of New York, Inc.*, 736 F. App'x 17, 18 (2d Cir. 2018); *Holtz v. Rockefeller & Co.*, 258 F. 3d 62, 82–83 (2d Cir. 2001). In order to satisfy this exhaustion requirement, however, it is not enough for a plaintiff to simply file a charge of discrimination or retaliation with the EEOC. Instead, a plaintiff may "typically may raise in a district court complaint *only* those claims that either were *included in or are reasonably related* to the allegations contained in her EEOC charge." *Staten*, 736 F. App'x at 18 (emphasis added); *see also Littlejohn*

*v. City of New York*, 795 F.3d 297, 323 (2d Cir. 2015).  Courts consider three categories of claims to be reasonably related: (i) claims based on conduct that "would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made"; (ii) claims alleging retaliation arising from the filing of an EEOC charge; and (iii) claims alleging "further incidents of discrimination carried out in precisely the same manner as alleged in the EEOC charge." *Williams v. New York City Hous. Auth.*, 458 F.3d 67, 70 and n.1 (2d Cir. 2006).  To determine whether claims properly "fall within the scope" of the EEOC investigation, "the focus should be on the factual allegations made in the [EEOC] charge itself," *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) (internal quotation marks and citation omitted), and "whether the complaint filed with the EEOC gave that agency adequate notice to investigate discrimination on both bases." *Williams*, 458 at 70 (internal quotation marks and citation omitted).

Here, to the extent Plaintiff attempts to bring a sex discrimination claim under Title VII *in this action*, that claim fails because she failed to assert any sex discrimination claim (or sex-discrimination allegations) in her EEOC Charge.  *See* Compl. at 27.  Specifically, in the "Discrimination Based On" section of her EEOC Charge, Plaintiff only checked off the boxes for *age* discrimination and retaliation.  *See* Compl. at 27.  Moreover, she failed to assert a single allegation pertaining to her sex or any other category protected under Title VII in the EEOC Charge.  *See* Compl. at 27.  All allegations in the EEOC Charge relate exclusively to age.  Accordingly, any Title VII sex-based discrimination claim that Plaintiff may attempt to assert in this lawsuit is not "included in or reasonably related to the allegations contained in her EEOC charge," and therefore Plaintiff has failed to exhaust her administrative remedies with respect to any Title VII claims, to the extent one could be construed to be plead in the Complaint.  *Staten*, 736 F. App'x at 18; *see e.g.*, *Acheampong v. N.Y. City Health & Hosps. Corp.*, No. 11-9205 (LTS), 2015 WL 1333242, *10 (S.D.N.Y. Mar. 25, 2015) (dismissing plaintiff's race, color, national origin

13

and age discrimination claims for failure to exhaust administrative remedies because they were not reasonably related to the disability claims asserted in his EEOC charge); *Pollard v. New York City Health & Hosps. Corp.*, No. 13-cv-4759 (ER), 2016 WL 5108127, at *5 (S.D.N.Y. Sept. 20, 2016) (dismissing plaintiff's race, color, and national origin discrimination claims for failure to exhaust administrative remedies because they were not reasonably related to the gender claims asserted in her EEOC charge); *Peterson v. Ins. Co. of N. Am.*, 884 F. Supp. 107, 109 (S.D.N.Y. 1995) ("[C]laims based on a wholly different type of discrimination" are barred from review.).

Because Plaintiff has failed to exhaust her administrative remedies with respect to her unspecified Title VII claim in this action, this claim is dismissed.

### III. Certain of Plaintiff's ADEA Allegations Are Barred by the Doctrine of Collateral Estoppel.

Saks next argues that the majority of Plaintiff's claims are barred by the doctrines of collateral estoppel and *res judicata*. Def. Mem. at 18. In particular, Saks argues that Plaintiff's present lawsuit seeks to "reopen claims dismissed by the SDHR and upheld on appeal in State Court [in Plaintiff's Article 78 Proceeding], mirroring her previous allegations." Def. Mem. at 18. The Court looks to New York law to determine the preclusive effect in federal court of the decision of the New York Supreme Court dismissing Plaintiff's Article 78 Proceeding, and gives that decision the same preclusive effect that a New York state court would recognize. *Sheffield v. Sheriff of Rockland Cnty. Sheriff Dep't*, 393 F. App'x 808, 811 (2d Cir. 2010) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)); *Siji Yu v. Knighted, LLC*, 811 F. App'x 55, 56 (2d Cir. 2020) ("Under the Full Faith and Credit Act, 28 U.S.C. § 1738, a federal court must apply New York preclusion law to New York state court judgments.").

The doctrine of collateral estoppel bars relitigation of a legal or factual issue that was previously decided in a prior action where: "(1) the issues in both proceedings are identical, (2)

14

the issue in the prior proceeding was actually litigated and actually decided, (3) there was [a] full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *Grieve v. Tamerin*, 269 F.3d 149, 153 (2d Cir. 2001) (quoting *United States v. Hussein*, 178 F.3d 125, 129 (2d Cir.1999)) (internal quotations omitted). In other words, collateral estoppel precludes a party from relitigating issues that were actually litigated and decided in a prior proceeding and that are, among other things, identical to the issues raised in a later proceeding. *Grieve*, 269 F.3d at 153.

Relevant here, "[t]he Supreme Court has held that collateral estoppel applies to discrimination claims previously litigated in a proceeding under N.Y. C.P.L.R. Article 78"—*i.e.*, Article 78 Proceedings. *Siji Yu v. Knighted, LLC*, 811 F. App'x 55, 57 (2d Cir. 2020) (citing *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 484 (1982)). For example, in *Siji Yu*, the Second Circuit held that the district court properly ruled that the plaintiff's Title VII and ADEA claims "were collaterally estopped" where the plaintiff filed a complaint with the SDHR against his employer, the SDHR ruled against plaintiff "finding there was no probable cause to support the discrimination complained of," and a New York state court upheld the SDHR's ruling on appeal in an Article 78 proceeding "after reviewing the record and determining that [plaintiff] had a full opportunity to present his discrimination and retaliation claims to the [SDHR], and that the agency's determination was not arbitrary and capricious." *Siji Yu*, 811 F. App'x at 57.

The procedural facts in this case are identical to what occurred in *Siji Yu*. Plaintiff filed a complaint with the SDHR in November 2018 against Saks, alleging that Saks discriminated against her based on her age in violation of Title VII and the ADEA. *See* SDHR Complaint; SDHR Pl. Rebuttal. In the SDHR Charge, Plaintiff asserted precisely the same discriminatory acts that she now asserts in *this* action, including (1) "giving her a warning on June 28, 2018," along with other "frivolous warnings under false accusations" during the time period of 2013 through November

15

30, 2018 (*cf.* Compl. at 8); (2) calling her into a meeting on October 4, 2018 "for a '60 Day PIP Follow-Up Process' to discuss her sales" (*cf.* Compl. at 8); and (3) in 2018 by placing her "along with five other associates between the ages of 50 and 70 years old," in its Accessories Department (*cf.* Compl. at 8). *See* SDHR Complaint; SDHR Pl. Rebuttal. As in *Siji Yu*, the SDHR ruled against Plaintiff, concluding that there was a "lack of evidence in support of [Plaintiff's] allegations" and dismissed Plaintiff's SDHR Charge. *See* SDHR Determination and Order After Investigation. Then, like in *Siji Yu*, Plaintiff appealed the SDHR's decision by commencing an Article 78 Action, realleging the same claims and allegations about facts purportedly occurring between May 2018 and the winter of 2019. *See* Article 78 Petition. Finally, as in *Siji Yu*, a New York state court upheld the SDHR's ruling and dismissed Plaintiff's Article 78 Petition, holding that "based on the record, it cannot be said that the SDHR's decision was arbitrary and capricious, or without a rational basis." *See* State Court Opinion. Accordingly, as in *Siji Yu*, any ADEA claims in *this* action arising from allegations that were previously litigated in Plaintiff's Article 78 Action are barred by the doctrine of collateral estoppel. *Siji Yu*, 811 F. App'x at 57; *Kremer*, 456 U.S. at 484.[6]

---

[6] This case is distinguishable from the Second Circuit's recent holding in *Whitfield v. City of New York*, 96 F.4th 504 (2d Cir. 2024), in which the Circuit held that judgment in a prior Article 78 proceeding will not preclude future damages *claims* (*i.e.*, res judicata or claim preclusion) where the petitioner sought relief that could not be awarded in a "pure" Article 78 proceeding. First, *Whitfield* explicitly cautioned that the opinion "do[es] not address *issue* preclusion"—*i.e.*, collateral estoppel, which is relevant to the Court's holding here. 96 F.4th at 523, n.16 (emphasis added). Second, in the *Whitefield* opinion, the Second Circuit specifically acknowledged—as good precedent—*Kremer v. Chemical Construction Corporation*, 456 U.S. 461 (1982), in which the Supreme Court held that collateral estoppel may apply to discrimination claims previously litigated in a proceeding under Article 78. 96 F.4th at 533, n.35. Finally, *Whitfield* specifically spoke to scenarios in which district courts are confronted with an Article 78 petition that poses questions or seeks relief *outside the scope* of Article 78. In *Whitfield*, for example, the petitioner filed a document styled as an Article 78 petition, alleging that the decision of New York City Administration for Children's Services ("ACS") not to hire him was arbitrary and capricious. The *Whitefield* petitioner, however, also alleged in his Article 78 petition that the ACS violated his "First and Fourteenth Amendment rights to Freedom of Speech, were Defamatory Per Se, and were taken in violation of Article 23-A of the Correction Law"—all claims which sought relief "other than those [damages] 'incidental to the primary relief sought.'" *Whitfield*, 96 F.4th at 520. Such is not the case here. In Plaintiff's Article 78 Petition, she expressly describes that she was appealing the SDHR's June 3, 2019 "Determination Letter," which found there was no probable cause to believe that Saks engaged in "age and race discrimination" against her—indisputably *within* the purview of Article 78. *See* Article 78 Petition at 5–6.

The Court notes, however, that certain of Plaintiff's allegations in *this* action occurred both after Plaintiff filed her SDHR Charge on November 30, 2018 *and* after she commenced her Article 78 Proceeding on July 15, 2019. For example, in this action, Plaintiff alleges that her supervisor, Briana Kottler "harassed" her on August 19, 2019, August 23, 2019 and August 24, 2019 by demanding that Plaintiff stay "in [her] zone" while "young employees" were allowed to "relocate[] to every leased boutique to ring sales for customers." Compl. at 9, 13, 23. In addition, Plaintiff alleges that she was discriminatorily terminated on August 5, 2022—well after the New York state court issued its January 3, 2020 decision upholding the SDHR's determination. To that end, any claims arising from factual allegations which occurred *after* Plaintiff filed her SDHR Charge could not have been litigated previously, and therefore, are not barred by collateral estoppel. Saks concedes as much in its briefing. *See* Def. Mem. at 19.

## IV. To the Extent Applicable, Certain of Plaintiff's Allegations May Be Time-Barred.

Finally, Saks argues, in the alternative, that even if certain of Plaintiff's claims survive, all allegations that arose prior to May 10, 2019, *i.e.*, 300 days prior to Plaintiff's filing of her EEOC Charge, are time barred. Def. Mem. at 15. Under the ADEA, a plaintiff must file an administrative charge with the EEOC *or an equivalent local agency* within 300 days of the date of injury. *See Gindi v. New York City Dep't of Educ.*, 786 F. App'x 280, 282 (2d Cir. 2019). As an initial matter, the Court notes that Saks's argument ignores that Plaintiff filed a charge with the SDHR—*i.e.*, "an equivalent state agency"—on November 30, 2018. *Gindi*, 786 F. App'x at 282; *see* SDHR Complaint. Thus, 300 days prior to Plaintiff's filing of her SDHR Charge would be February 3, 2018, and any allegations that arose prior to that date would, in fact, be time barred.[7]

---

[7] The "continuing violation" doctrine sometimes allows redress for events occurring before the 300-day time frame. *Staten v. City of New York*, 726 F. App'x 40, 43 (2d Cir. 2018) (finding that the "continuing violation" doctrine can apply to ADEA claims). Plaintiff does not raise the doctrine in her briefing, and "[a]s a general matter, the continuing violation doctrine is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing

17

Notwithstanding, in light of the Court's holding in *supra* Section III, the overwhelming majority of Plaintiff's allegations arising prior to May 10, 2019 are barred by collateral estoppel in any event. However, Defendants correctly point out that certain of Plaintiff's allegations do not provide specific dates such that the Court is unable to definitively determine whether they are time barred. For example, Plaintiff alleges that Saks turned her down "a few times . . . for promotions and transfers that were given to younger workers with much less experience and fewer qualifications." *See* Compl. at 23. While Plaintiff states that the "relevant events with the dates were submitted to the EEOC," she fails to allege the dates in her Complaint. *See* Compl. at 23. Accordingly, to the extent that any of Plaintiff's undated allegations arose before February 3, 2018, (and to the extent those allegations are not collaterally estopped for the reasons discussed in Section III), claims based on those allegations also would be time barred.

## CONCLUSION

For the foregoing reasons, the Court resolves Defendant's motion to dismiss as follows:

- The motion is GRANTED to the extent that the Complaint could be construed to allege an age discrimination claim under Title VII, because Title VII does not encompass claims for employment discrimination on the basis of age.

- The motion is GRANTED to the extent that the Complaint could be construed to allege a sex discrimination claim under Title VII, because such claim is barred for failure to exhaust administrative remedies.

- Regarding Plaintiff's claims for age discrimination, retaliation, and hostile work environment claims under the ADEA, any factual allegations that were previously raised in her November 30, 2018 SDHR Charge and subsequently litigated in Plaintiff's Article 78 Action are barred by the doctrine of collateral estoppel.

- Moreover, to the extent that any of Plaintiff's undated allegations arose prior to February 3, 2018 (and to the extent those allegations are not collaterally stopped), claims based on those allegations would also be time barred.

---

of compelling circumstances." *Trinidad v. New York City Dep't of Corr.*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006); *see also Cotz v. Matroeni*, 476 F. Supp. 2d 332, 356 (S.D.N.Y. 2007). As such, the Court does not apply the narrow and disfavored doctrine to Plaintiff's claims.

- Because Defendant did not move to dismiss Plaintiff's ADEA claims for age discrimination, retaliation, and hostile work environment on the merits, to the extent Plaintiff's remaining factual allegations state a claim for those causes of action, Plaintiff may proceed in this action.

The Clerk of Court is respectfully requested to terminate docket entry 47.

**SO ORDERED.**

Date:  September 10, 2024
       New York, NY

                                                **MARY KAY VYSKOCIL**
                                                **United States District Judge**